ESTATE OF FILZEN: FILZEN, Appellant, vs. HEADLEY and another, Trustees, Respondents.

*February 18—March 29, 1948.*

For the appellant there was a brief by *Doar & Knowles* of New Richmond, and oral argument by *W. T. Doar*.

For the respondents there was a brief by *Henry C. Oakey* of Osceola, and *Oppenheimer, Hodgson, Brown, Donnelly & Baer* of St. Paul, Minnesota, and oral argument by *S. D. Donnelly*.

BARLOW, J.   Paul Filzen, deceased, father of Charles E. Filzen, died December 10, 1941, leaving a last will and testament which was admitted to probate in the county court of Polk county on January 20, 1942.   Deceased left an estate appraised at $198,865.30.   His only heirs at law were two sons, the petitioner and Paul Filzen, Jr.   The will was signed on the 9th day of February, 1934, and subsequent codicils were added February 28, 1935, December 19, 1938, and April 15, 1939.   These codicils did not change the provisions of the will material to the issues in this case.   The material parts of the will follow:

"I give and bequeath to my sons, Charles E. Filzen and Paul Filzen, Jr., to each of them, forty thousand ($40,000) dollars in trust with my executors hereinafter named, and I hereby

324

authorize and direct said executors to set aside from the estate
of which I may die seized, for the benefit of my said sons, prop-
erty having a value of eighty thousand ($80,000) dollars,
which shall be divided into two equal parts to provide said
amount of forty thousand ($40,000) dollars for each of my
sons, and one of said parts held for the benefit of my son,
Charles E. Filzen, and the other of said parts held for the bene-
fit of my son, Paul Filzen, Jr. . . . The said trustees shall use
and apply so much of the income and/or principal of each of
said funds as the trustees, in their sole judgment and discre-
tion, may deem necessary or desirable to provide said
Charles E. Filzen and Paul Filzen, Jr., a good care and main-
tenance, having in mind at all times their mental and physical
conditions. . . .

"In case my said sons, Charles E. Filzen and/or Paul Fil-
zen, Jr., shall hereafter desire and make the necessary arrange-
ments to establish themselves in some honorable business, it
is my desire that, and I hereby direct said trustees to pay over
for this purpose from said trust funds such sum or sums as in
their discretion may seem necessary or desirable, bearing in
mind that it is my greatest wish that my said sons, Charles E.
Filzen and Paul Filzen, Jr., should become industrious and
worthy citizens and permanently engaged in some honorable
business, and I desire everything possible to be done to this
end, and if, and whenever said trustees are fully satisfied of the
complete recovery of my said sons, Charles E. Filzen and Paul
Filzen, Jr., or either of them, and believe that he or they will
handle the same carefully and prudently for his or their own
good, they are hereby authorized and directed to pay over to
them all of said trust fund then remaining in their hands. . . .

"It is my wish, however, that the trustees shall at all times
take into consideration the requirements of my said sons,
Charles E. Filzen and Paul Filzen, Jr., and in the event, in the
sole judgment and discretion of the trustees, additional funds,
other than those provided in the trust fund under paragraph
second, are necessary for the maintenance and support of my
said sons, or for their use if and when they become engaged in
some honorable business, the trustees shall reserve, out of the
principal of the trust estate hereunder, such sum or sums as
they deem advisable, and add the same to the trusts hereinbe-
fore created for my sons."

The trial court found the petitioner was sixty-six years of age at the time of the hearing; that he was a worthy citizen, frugal, industrious, and a man of good habits; that he lived a quiet, gentlemanly life, had no enemies and had many friends in the village of Osceola where he lives, and bore a good reputation in the community. It further found that petitioner's living habits were modest, that he did not use intoxicating liquor in any form, and that he was of sound mind. It also found that the physical and mental condition of the petitioner was the same at the time of the trial as it was at the time Mr. Filzen made the will in 1934.

For some years prior to his father's death petitioner lived in a hotel and was engaged in the radio-repair business, having a small amount of equipment which he kept in his room in the hotel or carried in his car. During part of that time his father had to supplement his income. After the death of his father petitioner discontinued business operations of any kind and continued to occupy a room in a hotel at Osceola, eating his meals at restaurants. For a period of years petitioner's health had been only fair at best, and shortly prior to the hearing he had been in a hospital for medical attention, although his doctor testified he was in good health at the time of the hearing.

Appellant argues that the trustees acted arbitrarily and unreasonably in refusing to pay over to petitioner all of said trust fund remaining in their hands. In order to determine whether the trust should be terminated we must look at the intent of the testator in creating the trust and the language of the trust to find the limits of discretion granted to the trustees. The discretion of trustees is not absolute and unlimited. *Viall v. Rhode Island Hospital Trust Co.* 45 R. I. 432, 123 Atl. 570, 32 A. L. R. 437; *Keating v. Keating,* 182 Iowa, 1056, 165 N. W. 74; 2 Perry, Trusts, p. 853, sec. 508. No claim is made by the trustees that they have an arbitrary right to exercise their discretion. They claim to have properly exercised their discretion under the terms of the trust in refusing to

terminate it. So long as trustees act in good faith and from proper motives and within the bounds of a reasonable judgment under the terms and conditions of the trust, the court has no right to interfere. It is only when they act outside the bounds of a reasonable judgment, or are guilty of an abuse of discretion, or when they act dishonestly and improperly that the court may interfere. Restatement, 1 Trusts, p. 481, sec. 187, Comment *e*; 3 Bogert, Trusts and Trustees, p. 1791, sec. 560; 3 Scott, Trusts, p. 1825, sec. 334.1; p. 1846, sec. 337.4; 2 Scott, Trusts, p. 996, sec. 187.

Testator, in creating this trust, named as one of the trustees a person who had been general office manager and bookkeeper for him for a number of years prior to his death, and who had been well acquainted with the beneficiaries under the trust. As a second trustee he named a trust officer of a large trust company. Testator was interested in having his sons enter into an honorable business if, in the judgment of the trustees, their health and mental condition permitted, and he authorized funds to be used for business purposes, in the discretion of the trustees. No claim is made that petitioner desires to enter into business, and it is admitted that at his age it would be improper for him to do so. This brings us to the provision in the trust that when the trustees are fully satisfied of the complete recovery of this petitioner and believe he will handle the proceeds of the trust carefully and prudently for his own good, they are authorized and directed to pay over to this petitioner the trust funds still remaining in their hands. Petitioner never engaged in any business requiring investment of funds, never had any experience in making investments. He is in no better condition to handle the funds at this time than he was at the time his father executed his will. The trial court properly found that petitioner's physical and mental condition was the same at the time of the trial as it was when testator executed his will and for many years thereafter while testator was still alive and could have changed his will if he felt petitioner was competent to handle the funds.

Petitioner is receiving ample funds from the trustees to properly care for him. We find no evidence to sustain petitioner's contention that the trustees acted arbitrarily or unreasonably. To have released the funds and terminated the trust would have been an unreasonable act on the part of the trustees. The trial court properly dismissed the petition.

*By the Court.*—Judgment affirmed, without costs.